IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DAVID ALAN MIKRUT,

                Plaintiff,

v.

CHRISTINE E. WORMUTH,

                Defendant.

OPINION and ORDER

22-cv-351-jdp

---

Plaintiff David Alan Mikrut, without counsel, brings this employment discrimination lawsuit about the United States Army Corps of Engineers twice failing to hire him for jobs operating locks and dams on the Upper Mississippi River. He contends that the Corps refused to hire him because years before he had testified in support of his father's equal employment opportunity complaint of age discrimination. I construe Mikrut's complaint to assert retaliation claims under Title VII of the Civil Rights Act and the Age Discrimination in Employment Act. Defendant Christine E. Wormuth, the United States secretary of the Army, moves for summary judgment. Dkt. 17. I will grant that motion and dismiss the case because Mikrut fails to show that Corps decisionmakers considered Mikrut's equal employment opportunity activity in making their hiring decisions.

PRELIMINARY MATTERS

Mikrut filed a brief titled as one in support of his own motion for summary judgment. Dkt. 50. Mikrut didn't file a separate formal motion for summary judgment, but if that is what he meant to do, I will deny that motion. As the court previously explained to him, the deadline for Mikrut to move for summary judgment in his favor has passed. *See* Dkt. 49. Nonetheless, I

will consider Mikrut's brief and supporting materials as his opposition to Wormuth's summary judgment motion.

Mikrut also moves for leave to file a reply to Wormuth's response to his own proposed findings of fact. Dkt. 68. Although this is essentially a sur-reply concerning Wormuth's motion for summary judgment, something ordinarily disfavored by this court, I will grant Mikrut's motion and I will consider his additional proposed findings.

UNDISPUTED FACTS

The following facts are undisputed unless otherwise noted.

Plaintiff David Alan Mikrut worked for defendant United States Army Corps of Engineers from March to September 2001 as a temporary lock and dam operator at Lock and Dam 6 in Trempealeau, Wisconsin.[1] Mikrut's father was a temporary employee with the Corps around the same time, and he filed an equal employment opportunity (EEO) complaint stating that the Corps did not select him for a permanent position because of his age. In February 2002, Mikrut was a witness at his father's EEO proceeding.

This case concerns Mikrut's applications for two permanent lock and dam operator positions with the Corps years after Mikrut's EEO activity. In February 2019, the Corps advertised an operator position at Lock and Dam 8 in Genoa, Wisconsin. The job posting listed the following responsibilities for an operator:

- Lubricating bearings, gears, and other moving parts.

---

[1] Wormuth notes a dispute about whether Mikrut worked as a temporary operator in 2000 or 2001, but she accepts Mikrut's statement that 2001 was the correct year, stating that the dispute is immaterial.

- Assisting in repairs to electrical circuits and machinery or small electrical and mechanical motors.

- Adjusting, lubricating, and/or performing preventive maintenance to a variety to power tools, equipment and machinery; painting gates, bulkheads, service bridge machinery.

- Operate electrical and/or hydraulic controls for filling and emptying valves to raise and lower water level.

- Operate controls to open and close lock gates.

- Handle mooring lines on the lock walls, operate tow haulage units, and positions vessels at the lock site.

- Enter lockage data into LPMS (Lock Performance Monitoring System).

- Operate roller and trainer gates for control of water level of the pool.

Dkt. 29-6, at 2.

Lockmaster Jane Mathison was the hiring official for this position. She states that she wanted to expedite the hiring process because the locking season typically begins in March. She also wanted to hire from within. After receiving the list of qualified applicants, which included Mikrut, she did not review the applicants' materials; instead she immediately chose the applicant who was then working as an administrative assistant at Locks and Dams 7 and 8.[2]

In March 2020, the Corps advertised a permanent operator position at Lock and Dam 7 in La Crescent, Minnesota. Lockmaster Delene Moser was the hiring official for this position.

---

[2] Wormuth sought and obtained a protective order under the Privacy Act of 1974, 5 U.S.C. § 552a. *See* Dkt. 16. Wormuth filed unredacted versions of documents under seal, as well as unsealed versions of those filings with various information redacted, including the names of the candidates who were hired for the lock and dam operator positions at issue. Because the names of those candidates are immaterial I will not identify them in this opinion.

After considering the resumes and cover letters of four applicants, including Mikrut, Moser hired the applicant who was already working at Lock and Dam 7 as a temporary operator.

I will discuss additional facts as they become relevant to the analysis.

ANALYSIS

Mikrut contends that the Corps refused to hire him for two jobs because he testified at his father's age-discrimination EEO proceeding in 2002. Mikrut doesn't state a specific cause of action in his complaint. This isn't a problem for him because unrepresented plaintiffs are not required to plead legal theories. *Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005). I agree with Wormuth's interpretation of Mikrut's complaint as raising retaliation claims against the federal government under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-16 ("Employment by Federal Government"), and the Age Discrimination in Employment Act, 29 U.S.C. § 633a ("Nondiscrimination on account of age in Federal Government employment"); *see also Gomez-Perez v. Potter*, 553 U.S. 474, 488 (2008) ("retaliation for complaining about age discrimination is 'discrimination based on age'").

The legal standard is the same under both theories: Mikrut must show that he (1) engaged in protected activity; (2) suffered an adverse employment action; and (3) there was a causal connection between the two. *See, e.g., Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 564 (7th Cir. 2015). Wormuth concedes the first two elements: Mikrut participated in his father's age-discrimination-based EEO hearing and he was not hired for two jobs with the Corps. The case boils down to the causation element.

That element is easier for Mikrut to meet than if he had been rejected for jobs with a private employer: to succeed on his claims here he need only show that his involvement in his

4

father's EEO hearing "play[ed] a part" in his non-selection for the operator positions with the Corps. *Huff v. Buttigieg*, 42 F.4th 638, 646 (7th Cir. 2022) (internal quotation omitted), *reh'g denied*, No. 21-1257, 2022 WL 16640618 (7th Cir. Nov. 2, 2022). That is, "personnel actions [must] be untainted by *any* consideration of age." *Babb v. Wilkie*, 589 U.S. 399, 402 (2020) (emphasis added). This is not a "but for" standard or even a "motivating factor" standard. *See id.*, at 411 ("We are not persuaded by the argument that it is anomalous to hold the Federal Government to a stricter standard than private employers or state and local governments.").[3]

Mikrut doesn't provide evidence directly showing that decisionmakers considered his EEO activity in hiring other people for the operator positions. In addressing Mikrut's claims, Wormuth discusses the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which remains relevant as "a means of organizing, presenting, and assessing circumstantial evidence in frequently recurring factual patterns found in discrimination cases." *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017). But it is "not the only way to assess circumstantial evidence of discrimination," *id.*, Mikrut doesn't present his claims using this framework, and the framework would seem to have limited utility in a case in which *any* use of a plaintiff's EEO activity in the hiring decision is enough to find the defendant liable. In this opinion I discuss concepts often used in the *McDonnell Douglas* framework such as pretext, but the key question isn't how the parties' evidence fits that framework; rather it is simply whether a reasonable jury could find that Corps decisionmakers considered Mikrut's EEO activity in making their hiring decisions.

---

[3] But-for causation is still required for a plaintiff to obtain remedies such as "'reinstatement, backpay, compensatory damages, or other forms of relief related to the end result of an employment decision.'" *Huff*, 42 F.4th at 646 (quoting *Babb*, 589 U.S. at 413).

5

**A.  2019 application for Lock and Dam 8**

I'll start with Mikrut's claims about not being selected as an entry-level operator for Lock and Dam 8 in February 2019.

A major focus of Mikrut's retaliation theory regarding this claim is that the person Lockmaster Mathison selected for the 2019 position was less qualified than him. The job posting and a "job analysis worksheet" signed by Mathison shows that maintenance-related education and job skills were a major qualification for the job. *See* Dkts. 29-6 and 62-2. Mikrut's resume shows that the majority of Mikrut's previous jobs were maintenance related and he had years of formal education relating to maintenance practices. Dkt. 62-4. And he had worked as a temporary operator about 18 years before his applying for this position. The candidate selected by Mathison was currently working on-site as an administrative assistant. Her resume showed her previous work experience was mostly as a special education paraprofessional or a hotel front desk associate, where she also "[t]rouble shot small electrical, mechanical and plumbing issues." Dkt. 62-5. Mikrut has presented evidence that at least raises a genuine dispute over whether Mikrut was better qualified.

But Wormuth argues that Mathison never got to the point of comparing the applicants' respective qualifications: after seeing the list of qualified candidates (12 people, including Mikrut), Mathison selected the internal candidate already working as an administrative assistant for Locks and Dams 7 and 8. Mikrut doesn't dispute that the applicant selected was qualified for the job. Wormuth says that this candidate "had established a trusting working relationship with her coworkers. . . . also knew Lock 8 logistically, had a solid, reliable work ethic, and met the qualification requirements for an entry-level lock and dam operator." Dkt. 27, at 1. Mathison also says that she wanted to expedite the process and promote from

6

within. It's undisputed that she didn't review the other applicants' resumes or other application materials.

Mikrut believes that this rationale was pretextual to hide Mathison's retaliatory intent. He states that Mathison knew about his EEOC activity: he asked her to be a witness in his father's EEO case in 2002, and she refused. And he focuses on a couple of points at which Mathison gave incorrect testimony about the events, which he believes illustrates her attempt at concealing her true intent to retaliate against him.

First, Mathison stated in a declaration connected with EEO proceedings that she did not know Mikrut, when in reality she knew him from working with him for a few months in 2001 when Mikrut was a temporary operator. But in context the only reasonable inference a jury could make about this misstatement is that it was a mistake: Mathison had already stated in the same declaration that she knew Mikrut from his 2001 stint with the Corps. Dkt. 29-8, at 1.

Second, Mathison initially stated that she conducted the hiring process using "direct hire authority," a procedure that "eliminates competitive rating and ranking and veterans' preference." Dkt. 33, at 4. She later stated that she was mistaken to think that direct-hire authority applied to that posting. The parties agree that the posting was made under the Corps' "Merit Promotion and Placement Plan"; Mathison states that at the time she thought the direct-hire process applied to hires made under that plan. That was incorrect.

The parties do not fully explain the import of Mathison's purported reliance on direct-hire authority. Mikrut asserts that under either procedure, the best qualified candidate should have been selected; he believes that he was that candidate. Mikrut also argues that under the Merit Promotion and Placement Plan that candidates should have been more rigorously

7

reviewed and compared, and perhaps explicitly ranked; it is undisputed that Mathison did none of those things here. Mikrut argues that it is implausible that Mathison wouldn't know how to properly hire for an operator job; Mathison states that this was her first hiring as a supervisor. Mikrut's filings are somewhat unfocused, but piecing his various arguments together, I take him to be contending that Mathison lied about the proper hiring authority, and circumvented more rigorous evaluation procedures to hire a less qualified candidate instead of him because of his EEO activity.

The problem for Mikrut is that he supports this theory with exceedingly little evidence. Based on the parties' submissions, a reasonable jury could conclude that Mikrut was more qualified than the person selected and that Mathison intentionally used direct-hire authority when it wasn't called for. But to what end? Mathison's failure to follow Corps hiring regulations is "insufficient, without more, to create . . . an inference of pretext." *Barnes-Staples v. Carnahan*, 88 F.4th 712, 717 (7th Cir. 2023) (internal quotations omitted; alteration in original). Mathison's desires to expedite the process and promote from within are the types of business decisions that this court does not second guess. *See Ajayi v. Aramark Bus. Servs.*, 336 F.3d 520, 532 (7th Cir. 2003) (courts "do not sit as super personnel departments, second-guessing an employer's facially legitimate business decisions."). Pre-selection of another candidate is not in itself proof that an employer meant to unlawfully discriminate against the other applicants. *See, e.g., Anderson w. Westinghouse Savannah River Co.*, 406 F.3d 248, 271 (4th Cir. 2005); *Hiner v. McHugh*, 546 Fed. App'x 401, 407 (5th Cir. 2013). Mikrut doesn't point to evidence showing that Mathison did so to keep Mikrut out of the job (instead of any of the other ten applicants who weren't selected) or that Mathison considered Mikrut's EEO activity in the course of the hiring process.

Plaintiffs in employment cases often point to suspicious timing to reveal the defendant's discriminatory intent, although courts of this circuit often note that even then, "suspicious timing alone is insufficient to support a . . . retaliation claim." *Leonard v. E. Illinois Univ.*, 606 F.3d 428, 433 (7th Cir. 2010). Wormuth notes the substantial length of time between Mikrut's EEO activity and the hiring decision for this job—about 17 years. In short, the timing here is nowhere near suspicious. To the contrary, a "substantial time lapse . . . is counter-evidence of any causal connection." *Oest v. Illinois Dep't of Corr.*, 240 F.3d 605, 616 (7th Cir. 2001) (internal quotation omitted), *overruled on other grounds by Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016). Mikrut argues in his brief that his failure to get a job with the Corps over a long period of time shows that there is a longstanding grudge against him within the organization, but he doesn't submit proposed findings of fact supporting that assertion. And other facts undercut that premise: in March 2019, Mikrut was offered and accepted a job with the Corps as a maintenance worker, and then was offered and turned down a job as a temporary operator position at Locks and Dams 7 and 9. As for Mathison herself, Mikrut says that in 2002 Mathison hung up the phone on him when he asked her to be a witness in his father's EEO hearing. But that isn't enough to show that she harbored a grudge against him 17 years later. Ultimately, Mikrut's case for retaliation is really just his speculation that Mathison saw his name on the list of applicants and rejected him because of his EEO activity many years earlier. That is not sufficient for a reasonable jury to find that Mikrut's EEO activity played a part in Mathison's decision. *Igasaki v. Illinois Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 961 (7th Cir. 2021) ("We reiterate that a speculative inference does not an employment discrimination case make."). Therefore, I will grant Wormuth's motion for summary judgment on this claim.

## B. 2020 application for Lock and Dam 7

Mikrut's claim about the operator position at Lock and Dam 7 has even less support than his claim about Lock and Dam 8. It is undisputed that this position was appropriately filled using direct-hire authority, with Lockmaster Moser considering only the candidates' cover letters and resumes.

Unlike with Mathison and the 2019 position, Moser states that she wasn't aware of Mikrut's EEO activity when she made the hiring decision for the 2020 position. Without counter-evidence from Mikrut, that alone would be enough to grant summary judgment to Wormuth on this retaliation claim.

Mikrut attempts to dispute this, stating that Moser was "attached" to Lock and Dam 6 during the several-month period that he worked there in 2001 and during his father's EEO case. It is undisputed that Moser was elsewhere "on assignment" during that time and so never actually worked with Mikrut. Mikrut states that anyone working at Lock and Dam 6 would have known about his father's EEO case, but he doesn't provide evidence showing why that would be the case. He also states that "Moser could not help but notice the things [he] had accomplished as well as the notoriety [he] gained from them," Dkt 60, at 27, including building a giant birdhouse that he says "became a centerpiece for the site," Dkt. 63, at 7. But those achievements or notoriety among employees at Lock and Dam 6 is irrelevant to whether Moser was specifically aware of Mikrut's EEOC activity. Mikrut hasn't presented evidence that could lead a reasonable jury to infer that Moser knew about his EEO activity.

And in any event, even had Moser known about Mikrut's EEO activity, Mikrut doesn't present evidence rising above the level of speculation that Moser considered that activity in her hiring decision. Moser hired a candidate who was already working as a temporary operator,

10

had "demonstrated superior skills" in that job, and was familiar with the intricacies of that particular location, including the presence of a rock weir that made locking more difficult, and the use of a "two-mule system to lock northbound doubles during a high outdraft." Dkt. 25, at 3. The candidate that Moser selected had also completed enough of the Inland Marine Transportation System Lock Operator Certification Program that she could immediately be scheduled on any shift without supervision, an advantage over other candidates—including Mikrut—who didn't have that training.

Mikrut argues that Moser's retaliatory intent can be demonstrated from her statements focusing on aspects of the job like the two-mule system or rock weir, issues that Mikrut believes are largely irrelevant, over maintenance functions that he excelled at. But in employment discrimination cases like this, the question isn't whether Moser's decision was reasonable, fair, or mistaken. *Ajayi*, 336 F.3d at 532. The question is whether any of the evidence suggests that Moser considered Mikrut's EEO activity in making her hiring decision. No reasonable jury could conclude that from Moser's explanation of the factors she weighed in making the hire.

Mikrut also argues that Wormuth has forged documents associated with the hiring process, including the email that the Corps claims to have sent Mikrut telling him he wasn't selected for the job (which he says he didn't receive), and the selected applicant's cover letter and resume. But Mikrut doesn't explain how the email could be relevant to Moser's intent in hiring someone else. As for the selected applicant's cover letter and resume, Mikrut comes nowhere close to showing that they are forgeries. Mikrut notes that there are two different versions of that resume in the record, with the version presented in Mikrut's EEO proceedings regarding this job not including the candidate's then-current work as a temporary operator. Dkt. 62-21. He says that this means that the version presented by Wormuth now, including

11

that information, is fabricated. Dkt. 61-22. Wormuth explains in her reply brief that the Corps inadvertently sent an incorrect, outdated version of the resume to the EOO investigator instead of the resume that the candidate had submitted for the position. That statement isn't supported by admissible evidence, but it is a reasonable explanation, particularly given that the applicant explicitly discussed her operator experience in her cover letter. In any event, this discrepancy doesn't plausibly suggest that the second resume is a forgery, nor does it change the substance of the applicant's qualifications: Moser knew that the applicant was currently working as a temporary operator regardless which version of the resume she received. Mikrut argues that the cover letter is a forgery too, based on differences in formatting between the cover letter and second resume, and perceived grammatical errors that "a recent college graduate should not have missed." Dkt. 50, at 7. This is just pure speculation by Mikrut that the applicant's documents aren't what Wormuth says they are, and that Corps staff is attempting to conceal Moser's consideration of Mikrut's EEO activity. The bottom line is that no evidence suggests that Moser considered Mikrut's EEO activity in hiring someone else for this job. I will grant summary judgment to Wormuth on this claim.

ORDER

IT IS ORDERED that:

1. Plaintiff's motion for summary judgment, Dkt. 50, is DENIED.

2. Plaintiff's motion for leave to file a reply to his proposed findings of fact, Dkt. 68, is GRANTED.

3. Defendant's motion for summary judgment, Dkt. 17, is GRANTED.

4.  The clerk of court is directed to enter judgment accordingly and close the case.

Entered March 26, 2024.

                                            BY THE COURT:

                                            /s/

                                            _____
                                            JAMES D. PETERSON
                                            District Judge